UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Marquette Commercial Finance, | Case No. 16-cv-4104 (PAM/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Austal USA, LLC, | |
| Defendant. | |

This matter is before the Court on Defendant's Motion to Dismiss. For the following reasons, the Motion is granted.

**BACKGROUND**

Defendant Austal USA is an Alabama company that builds ships. It ordered piping system components from non-party Piping Systems International ("PSI"), a company also based in Alabama. PSI received a loan from Plaintiff Marquette Commercial Finance, which was at that time a Minnesota company. Marquette took as collateral the accounts receivable from Austal's purchase, and Austal began to make payments directly to Marquette.

Austal and PSI had a disagreement about the quality of the goods PSI provided to Austal, and Austal stopped paying for those goods. The total amount Austal owes PSI is more than $500,000. Marquette served Austal with a Minnesota state-court complaint on November 17, 2016, and Austal removed that complaint to this Court on December 7,

2016. On December 6, 2016, Austal filed its own lawsuit in Alabama state court against both PSI and Marquette.

Austal claims that it has insufficient contacts with Minnesota for the exercise of either general or specific personal jurisdiction. Austal also contends that PSI is an indispensable party and that the case should be dismissed for failure to join PSI. Finally, Austal argues that the matter should be dismissed under forum non conveniens principles.

Marquette responds that Austal received notice that its account was assigned to Marquette and Austal made payments to Marquette under that assignment, making jurisdiction appropriate. Marquette also argues that PSI is not indispensable because Marquette's notice to Austal under Minn. Stat. § 336.9-406 is an enforceable agreement between Marquette and Austal. Finally, Marquette contends that Minnesota is not an inconvenient forum but that Alabama is more convenient, warranting a transfer to the Southern District of Alabama.

**DISCUSSION**

The Court can exercise personal jurisdiction over a nonresident defendant if (1) Minnesota's long-arm statute, Minn. Stat. § 543.19, is satisfied; and (2) the exercise of personal jurisdiction does not offend due process. Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003). Because Minnesota's long-arm statute extends the personal jurisdiction of Minnesota courts as far as due process allows, see, e.g., In re Minn. Asbestos Litig., 552 N.W.2d 242, 246 (Minn. 1996), the Court need only evaluate whether the exercise of personal jurisdiction comports with the requirements of due

process. See Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 614 (8th Cir. 1998).

Due process requires that the defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). There must be some act by which the defendant "purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). In contrast, contacts that are merely random, fortuitous, attenuated, or that are the result of "unilateral activity of another party or a third person" will not support personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citation omitted).

To determine the sufficiency of a defendant's conduct with the forum state, the Court examines five factors: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relation between the contacts and the action; (4) the forum state's interest in the litigation; and (5) the convenience of the parties. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003). The third factor distinguishes between general and specific jurisdiction. Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1432 (8th Cir. 1995). General jurisdiction is present whenever a

defendant's contacts with the forum state are so "continuous and systematic" that it may be sued in the forum over any controversy, independent of whether the cause of action has any relationship to the defendant's activities within the state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Specific jurisdiction refers to jurisdiction over causes of action arising from or related to the defendant's actions within the forum state. Burger King, 471 U.S. at 472-73. The fourth and fifth factors are secondary to the analysis. Minn. Min. & Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 65 F.3d 694, 697 (8th Cir. 1995). Finally, in examining these factors, the Court may consider matters outside the pleadings. See Stevens v. Redwing, 146 F.3d 538, 543, 546 (8th Cir. 1998).

Marquette argues that this action arises out of Austal's contacts with Minnesota in the form of Austal's payments to Marquette, which were made via wire transfer from Austal in Alabama to Marquette's bank in California. Marquette claims that Austal "assented" to the choice-of-law and jurisdiction provisions in the underlying contract between Marquette and PSI by making payments to Marquette pursuant to the assignment. Marquette offers no legal authority to support its argument that a contract's forum-selection clause binds a non-party to that contract, likely because there is no such authority. Austal did not assent to any terms of Marquette's contract with PSI, and the forum-selection clause in that contract does not bind Austal.

Marquette also contends that Austal's payments to Marquette are sufficient to allow Minnesota to exercise jurisdiction over Austal. Marquette claims that Austal "conduct[ed] business" with Marquette, but that is a misstatement of the parties'

relationship. Austal did not seek out Marquette for a business deal. Rather, Austal learned that payments to its vendor would have to be made to a different entity and it made those payments. Austal's payments to Marquette's California bank are the result of "unilateral activity of another party or a third person" that cannot support personal jurisdiction. Burger King, 471 U.S. at 474.

Austal does not have sufficient contacts with Minnesota to allow for the exercise of personal jurisdiction over it. Austal cannot be said to have "purposefully availed" itself of Minnesota, such that it could anticipate being haled into court here. The exercise of jurisdiction over Austal does not comport with the Due Process Clause.

Having determined that the Court lacks jurisdiction over Austal, it is not necessary to reach the alternative grounds for either dismissal or transfer of venue.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Defendant's Motion to Dismiss (Docket No. 4) is **GRANTED** and this matter is **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 9, 2017

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge